UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

*In re:*

CASE NO. 24-17342-RAM
CHAPTER 13

TATYANA PAULINE ARBOLEDA,

      Debtor.

_____/

## MOTION FOR PROSPECTIVE RELIEF FROM AUTOMATIC STAY

U.S. BANK TRUST NATIONAL ASSOCIATION AS TRUSTEE OF THE TIKI SERIES III TRUST ("Movant") by and through its attorney, hereby moves this Court, for prospective relief from the automatic stay pursuant to 11 U.S.C. § 362, with respect to certain real property of the Debtor having an address of *15067 SOUTH WEST 103 TERRACE, UNIT 14112, MIAMI, FL 33196* (the "Property"). In further support of this Motion, Movant respectfully states:

1.    A petition under Chapter 13 of the United States Bankruptcy Code was filed with respect to the Debtor on July 22, 2024.

2.    YUSSEF ISMAEL has executed and delivered or is otherwise obligated to Movant with respect to that certain promissory note, dated November 14, 2005, in the original principal amount of $173,520.00 (the "Note"). A true and correct copy of the Note is attached hereto as Exhibit A.

3.    Pursuant to that certain Mortgage, dated November 14, 2005 (the "Mortgage") executed by YUSSEF ISMAEL, a single person ("Mortgagor"), and recorded in Official Records of Miami-Dade County at Book 24464, Pages 0695, all obligations (collectively, the "Obligations") YUSSEF ISMAEL under and with respect to the Note and the Mortgage are secured by the Property. A true and correct copy of the Mortgage is attached hereto as Exhibit B.

4.    The legal description of the Property is

UNIT NO. 14112, OF CORAL CLUB GARDEN VILLAS, A CONDOMINIUM,

ACCORDING TO THE DECLARATION OF CONDOMINIUM THEREOF, AS RECORDED IN OFFICIAL RECORDS BOOK 23547, PAGE 1153, OF THE PUBLIC RECORDS OF MIAMI DADE COUNTY, FLORIDA

5.    The record owners of the Property are the Debtor and YUSSEF ISMAEL.

6.    YUSSEF ISMAEL is indebted to Secured Creditor in the amount of $229,652.67 principal balance, plus any additional interest, advances, costs and attorneys' fees advanced by Secured Creditor, pursuant to the loan documents.  See Exhibit C attached hereto.

7.    The Debtor has failed to remit payment to Secured Creditor since the installment due on November 1, 2018 and, therefore, the interests of Secured Creditor are not being adequately protected. The post-petition payment address is:  c/o SN Servicing Corporation, 323 5th Street, Eureka, CA 95501.  See Exhibit C attached hereto.

8.    As a result of the default, Movant initiated a foreclosure action on June 21, 2013, in the Circuit Court of the Eleventh Judicial Circuit, in and for Miami-Dade County, Florida ("Circuit Court"); case number 2013-021852-CA-01 ("Foreclosure Case").   A copy of the Foreclosure Case docket is attached hereto as Exhibit D.

9.    On January 7, 2016, the Circuit Court entered a Final Judgment of Mortgage Foreclosure in the amount of $213,367.40 ("Final Judgment"), setting a foreclosure sale date of May 9, 2016.   The foreclosure sale was later canceled as a result of Borrower filing for bankruptcy.

10.    Further, On January 6, 2020, the Circuit Court entered an Order Vacating the Final Judgment as a result of Debtor TATYANA PAULINE ARBOLEDA filing an Emergency Motion to Cancel the Foreclosure Sale and Vacate Final Judgment for not being served as a named Defendant in the Foreclosure Action, as Debtor acquired said title pursuant to the Court's directive in a divorce case no. 2011-027279 FC 04, 11th Judicial Circuit Miami-Dade County, Florida. See Order Vacating Final Judgment attached hereto as Exhibit E.

11.    The Debtor's case is one of FIVE bankruptcies filed since May 2016 regarding the Property which demonstrates a pattern of manipulation and bad faith with the sole intention of hindering and delaying the pending state court litigation.

12.    All of the previous bankruptcy cases were filed in this division and all resulted in the entry of dismissal orders except for the Chapter 7 Case 19-18375-LMI.

13.    The Debtor's filing history is set forth below:

| Party Name | Case Number | Case Title | Court | Date Filed | Date Closed |
|---|---|---|---|---|---|
| Ismael, Yussef (db) | 1:2016bk16600 | Yussef Ismael | Florida Southern Bankruptcy Court | 5/6/2016 | 1/17/2017 |
| Ismael, Yussef (db) | 1:2016bk26127 | Yussef Ismael | Florida Southern Bankruptcy Court | 12/2/2016 | 10/25/2019 |
| Tatyana Arboleda | 1:2019bk18375 | Tatyana Arboleda | Florida Southern Bankruptcy Court | 6/25/2019 | 10/25/2019 |
| Tatyana Pauline Arboleda | 1:2021bk10636 | Tatyana Pauline Arboleda | Florida Southern Bankruptcy Court | 1/25/2021 | 2/21/2024 |
| Tatyana Pauline Arboleda | 1:2024bk17342 | Tatyana Pauline Arboleda | Florida Southern Bankruptcy Court | 7/22/2024 | |

14.    Movant believes the combined bankruptcies set forth above represent gross misconduct in the form of manipulation and bad faith.  That Debtor filed the instant case in bad faith with the sole intention of hindering and delaying Movant in the pursuit of its lawful remedies to foreclose its lien under Florida law.

15.    Based on the delinquency status of the loan, there are no feasible repayment or modification options available to the Debtor as they are not in privity of contract with the Movant.

16.    In order to complete the foreclosure sale of the Property, Movant also seeks prospective in rem relief from the automatic stay pursuant to 11 U.S.C. §362(d)(4).

17.    A debtor is deemed to have filed a petition for bankruptcy in bad faith where the purpose of the filing is to avoid one creditor and not to alleviate financial distress.  In re

Sammons, 210 B.R. 197, 199 (Bankr. N.D. Fla 1997).  In addition, a debtor's petition is filed in bad faith where the debtor has only one asset, few unsecured creditors, few employees, a pending foreclosure action, and the timing of the bankruptcy filings evidences an intent to delay or frustrate the efforts of the debtor's secured creditor.  In re Canbec Inves. Corp., 349 B.R. 915, 918 (Bank. MD Fla. 2006).  Furthermore, the filing of a bankruptcy petition merely to prevent foreclosure, without the ability or intention to reorganize, is an abuse of the Bankruptcy Code. Weiszhaar Farms, Inc. v. Livestock State Bank, 113 B.R. 1017, 1020 (Bankr. S.D. Fla. 1990). Furthermore, Movant's security interest in the property is being significantly jeopardized by the Debtor(s) failure to make said payments while Movant is prohibited from pursuing lawful remedies to protect said security interest.

18.    The Debtor filed the instant Bankruptcy action on July 22, 2024, with the intention to delay the foreclosure sale of the Property.   It is clear that the current petition was filed solely to delay movant's efforts to complete foreclosure of the Property.

19.    Pursuant to 11 U.S.C. §362(c)(3)(A), the automatic stay is only in effect for 30 days upon filing of the petition in this case, and the Debtor has not filed a Motion to Extend the Automatic Stay in regards to Movant.

20.    In order to complete the foreclosure sale of the Property, Movant seeks prospective *in rem* relief from the automatic stay pursuant to 11 U.S.C. §362(d)(4).

21.    The estimated market value of the Property is $ 274,500.00. The basis for such valuation is Miami-Dade County Property Appraiser.  A copy of the valuation is attached hereto as Exhibit F.

22.    Cause exists for relief from the automatic stay for the following reasons:

(a)    Movant's interest in the Property is not adequately protected.

(b)    Debtor's current bankruptcy filing is in bad faith pursuant to 11 U.S.C.

§362(d)(4).

(c)    Pursuant to 11 U.S.C. § 362(d)(2)(A), Debtor has/have no equity in the Property.

WHEREFORE, Movant prays that this Court issue an Order terminating or modifying the stay and granting the following:

1.    Prospective *in rem* relief from the automatic stay, which will be binding in any other bankruptcy case filed involving the Property, by the Debtor or any other individual or entity, that is filed within the next two years pursuant to 11 U.S.C. §362(d)(4).

2.    That the Order be binding and effective despite any conversion of this bankruptcy case to a case under any other chapter of Title 11 of the United States Code.

3.    For attorneys' fees and costs incurred in bringing this Motion before the Court to be recoverable in the Circuit Court Foreclosure Case.

4.    That the 14-day stay of the order pursuant to Bankruptcy Rule 4001(a)(3) be waived.

5.    For such other relief as the Court deems proper.

Respectfully submitted,
HOWARD LAW

 /s/ Matthew Klein
MATTHEW KLEIN
FLORIDA BAR#: 73529
4755 Technology Way, Suite 104
Boca Raton, FL 33431
Telephone: 954-893-7874
Fax: 888-235-0017
Email: matthew@howardlaw.com

**<u>CERTIFICATE OF SERVICE</u>**

**I HEREBY CERTIFY** that on August 7, 2024, I electronically filed the foregoing with

the Clerk of Court by using the CM/ECF System, which will send a notice of electronic filing to

all CM/ECF participants:

Nancy K. Neidich, POB 279806, Miramar, FL 33027
Office of the US Trustee, 51 S.W. 1st Ave., Suite 1204, Miami, FL 33130

23.  And a copy was sent via US Mail to:
Tatyana Pauline Arboleda, 15067 SW 103 Terr #14112, Miami, FL 33196


<u>/s/ Matthew Klein</u>
Matthew Klein
Florida Bar No.: 73529



Copy

 # EXHIBIT A 



ЛСЮ

SEE "PREPAYMENT NOTE ADDENDUM" ATTACHED HERETO AND MADE A PART HEREOF.
SEE "INTEREST-ONLY ADD. TO ARM NOTE" ATTACHED HERETO AND MADE A PART HEREOF.
SEE "ADDENDUM TO NOTE" ATTACHED HERETO AND MADE A PART HEREOF.

MIN
MERS Phone.

# ADJUSTABLE RATE NOTE

LOAN NO :

(LIBOR Six-Month Index (As Published In *The Wall Street Journal*) - Rate Caps)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

| NOVEMBER 14, 2005 | MIAMI | FLORIDA |
|---|---|---|
| [Date] | [City] | [State] |

15067 SW 103 TERRACE 14112, MIAMI, FL 33196
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 173,520.00 (this amount is called "Principal"), plus interest, to the order of Lender. Lender is
FIRST MAGNUS FINANCIAL CORPORATION, AN ARIZONA CORPORATION

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 6.875 %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the first day of each month beginning on JANUARY, 2006 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on DECEMBER 01, 2035 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at FIRST MAGNUS FINANCIAL CORPORATION, AN ARIZONA CORPORATION

603 NORTH WILMOT ROAD, TUCSON, AZ 85711
or at a different place if required by the Note Holder.

(B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $ 1,139.90 . This amount may change

(C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

MULTISTATE ADJUSTABLE RATE NOTE - LIBOR SIX-MONTH INDEX (AS PUBLISHED IN *THE WALL STREET JOURNAL*) -
Single Family - Fannie Mae UNIFORM INSTRUMENT
Amended for Florida

Initials Y.T.
Form 3520 1/01

11-63074

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

(A) Change Dates

The interest rate I will pay may change on the first day of          DECEMBER, 2010          , and on that day every
**6th**     month thereafter. Each date on which my interest rate could change is called a "Change Date."

(B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal* The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

(C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding
      TWO AND ONE QUARTER          percentage points (      2 250          %) to the Current
Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

(D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than          12.875          %
or less than       2.250          %. Thereafter, my interest rate will never be increased or decreased on any single
Change Date by more than       TWO AND 000/1000THS          percentage point(s) (      2.000          %)
from the rate of interest I have been paying for the preceding       6       months. My interest rate will never be greater
than      12.875      % .

(E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

Initials VI

VMP-838N(FL) (0005)                      Page 2 of 4                      Form 3520 1/01

### 7. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of         15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000        % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount  That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees

### 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

### 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

### 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

### 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

Initials $\cancel{I}$
Form 3520 1/01

Copy

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

## 12. DOCUMENTARY TAX
The state documentary tax due on this Note has been paid on the mortgage securing this indebtedness.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____  _____(Seal)        _____  _____(Seal)
YUSSEF ISMAEL                             -Borrower                                                         -Borrower


_____  _____(Seal)        _____  _____(Seal)
                                          -Borrower                                                         -Borrower


_____  _____(Seal)        _____  _____(Seal)
                                          -Borrower                                                         -Borrower


_____  _____(Seal)        _____  _____(Seal)
                                          -Borrower                                                         -Borrower

*[Sign Original Only]*

NOTE ALLONGE
==================================

For purposes of further endorsement of the following described
Note, this Allonge is affixed and becomes a permanent part of
said Note:

Loan #: ▮▮▮▮▮▮▮

Executing Mortgagor: Yussef Ismael

Original Mortgage Amount:      $173,520.00

Original Lender: First Magnus Financial Corporation, An Arizona
                                                    Corporation

Loan Date: November 14, 2005

Property Address: 15067 SW 103 Terrace 14112, Miami, FL  33196

Without recourse pay to the order of:   AURORA LOAN SERVICES LLC

By: _Karen G. Parag_____
Name: _Karen J. Parag_____
Title: _Admin Asst Paralegal_
Company: First Magnus Financial Corporation, An Arizona
                                                    Corporation

11-03074

Copy

## NOTE ALLONGE
================================

For purposes of further endorsement of the following described
Note, this Allonge is affixed and becomes a permanent part of
said Note:

AURORA #

Executing Mortgagor: Yussef Ismael

Original Mortgage Amount: $173,520.00

Loan Date: 11/14/2005

Without recourse pay to the order of:

By: _____

Name: Nancy Walker
Title: Assistant Vice President
Company: AURORA LOAN SERVICES LLC

EXHIBIT B

CFN 2006R0448212
OR Bk 24464 Pgs 0695 - 723; (29pgs)
RECORDED 04/26/2006 15:35:50
MTG DOC TAX 607.60
INTANG TAX 347.04
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA

Return To:

**FIRST MAGNUS FINANCIAL CORPORATION**

**603 N. WILMOT**
**TUCSON, AZ 85711**

This document was prepared by:

**FIRST MAGNUS FINANCIAL CORPORATION**
**603 N. WILMOT**
**TUCSON, AZ 85711**

RECEIVED
JUN 16 2006

————————————[Space Above This Line For Recording Data]————————————

# MORTGAGE

**LOAN NO.:** ▮▮▮▮▮
**ESCROW NO.:** ▮▮▮▮▮

**MIN** ▮▮▮▮▮
**MERS Phone:** ▮▮▮▮▮



## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) **"Security Instrument"** means this document, which is dated    **NOVEMBER 14, 2005** together with all Riders to this document.
(B) **"Borrower"** is
**YUSSEF ISMAEL, A SINGLE PERSON**

Borrower is the mortgagor under this Security Instrument.
(C) **"MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone of P.O. Box 2026, Flint, MI 48501-2026, tel. ▮▮▮▮▮
(D) **"Lender"** is
**FIRST MAGNUS FINANCIAL CORPORATION, AN ARIZONA CORPORATION**

Initials: **YE**

Lender is a CORPORATION
organized and existing under the laws of ARIZONA
Lender's address is
603 NORTH WILMOT ROAD, TUCSON, AZ 85711
(E) "Note" means the promissory note signed by Borrower and dated          NOVEMBER 14, 2005          .
The Note states that Borrower owes Lender
ONE HUNDRED SEVENTY THREE THOUSAND FIVE HUNDRED TWENTY AND NO/100 X X X X X X X X X X
                                                                                            Dollars
(U.S. $ 173,520.00          ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than   DECEMBER 01, 2035          .
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

[XX] Adjustable Rate Rider       [XX] Condominium Rider                        [ ] 1-4 Family Rider
[ ] Graduated Payment Rider      [ ] Planned Unit Development Rider            [ ] Biweekly Payment Rider
[ ] Balloon Rider                [ ] Rate Improvement Rider                    [ ] Second Home Rider
[XX] Other(s) [specify] PREPAYMENT RIDER
                        INTEREST-ONLY ADDENDUM TO ADJUSTABLE RATE RIDER
                        ADDENDUM TO ADJUSTABLE RATE RIDER

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments, and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.

Initials: VI

(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in the                    COUNTY
[Type of Recording Jurisdiction]  of                    MIAMI-DADE                    [Name of Recording Jurisdiction]:

UNIT NO. 14112, OF CORAL CLUB GARDEN VILLAS, A CONDOMINIUM, ACCORDING TO THE DECLARATION OF CONDOMINIUM THEREOF, AS RECORDED IN OFFICIAL RECORDS BOOK 23547, PAGE 1153, OF THE PUBLIC RECORDS OF MIAMI DADE COUNTY, FLORIDA.

Parcel ID Number:                                                      which currently has the address of
                    15067 SW 103 TERRACE 14112                                     [Street]
        MIAMI                              [City], Florida        33196        [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

Initials: VC

VMP-6A(FL) (0005)                    Page 3 of 16                    Form 3010 1/01

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment

can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest

shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

Initials: _____

Form 3010  1/01

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Initials: YI
Form 3010  1/01

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of

Initials: YI

any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers

Initials: YL

unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the

Initials: VI
Form 3010  1/01

purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Initials: VL
Form 3010  1/01

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Attorneys' Fees.** As used in this Security Instrument and the Note, "attorneys' fees" shall include any attorneys' fees awarded by an appellate court and any attorneys' fees incurred in a bankruptcy proceeding.

**25. Jury Trial Waiver.** The Borrower hereby waives any right to a trial by jury in any action, proceeding, claim, or counterclaim, whether in contract or tort, at law or in equity, arising out of or in any way related to this Security Instrument or the Note.

Initials: YE

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

_____ -Witness

_____ -Witness

_____(Seal)          _____(Seal)
YUSSEF ISMAEL                  -Borrower                                        -Borrower

_____(Seal)          _____(Seal)
                               -Borrower                                        -Borrower

_____(Seal)          _____(Seal)
                               -Borrower                                        -Borrower

_____(Seal)          _____(Seal)
                               -Borrower                                        -Borrower

(Property Address)                         (Mailing Address)
15067 SW 103 TERRACE 14112                 15067 SW 103 TERRACE 14112
MIAMI, FL 33196                            MIAMI, FL 33196

VMP-6A(FL) (0005)                Page 15 of 16                Form 3010  1/01

STATE OF  FLORIDA
    The foregoing instrument was acknowledged before me this    11/14/05    County ss: Miami Dade
YUSSEF ISMAEL                                                             by

who is personally known to me or who has produced   Dr. license   as identification.

Notary Public

VERONICA RIVERO
MY COMMISSION #DD383331
EXPIRES: JAN 03, 2009
Bonded through 1st State Insurance

# EXHIBIT C

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

*In re:*

CASE NO. 24-17342-RAM
CHAPTER 13

TATYANA PAULINE ARBOLEDA,

Debtor.

_____/

## AFFIDAVIT AS TO INDEBTEDNESS

STATE OF ___California___

COUNTY OF ___Humboldt___

**BEFORE ME** an officer authorized to take oaths this day personally appeared ___Jessica Barragan___ of SN Servicing Corporation ("Servicer"), who, being first duly sworn, deposes and says:

1.    I am authorized to sign this affidavit on behalf of Movant, U.S.  BANK  TRUST NATIONAL ASSOCIATION AS TRUSTEE OF THE TIKI SERIES III TRUST, ("Movant").

2.    I am a _Bankruptcy Asset Manager_ of the Servicer, which is Movant's servicing agent for the subject loan ("the Loan").

3.    Servicer maintains records for the Loan.  As part of my job responsibilities for the Movant, I am familiar with the type of records maintained by the Servicer in connection with the Loan.

4.    The information in this affidavit is taken from the Servicer`s business records. I have personal knowledge of the Servicer`s procedures for creating these records. They are: (a) made at or near the time of the occurrence of the matters recorded by persons with personal knowledge of the information in the business record, or from information transmitted by persons with personal knowledge; (b) the records are kept in the course of the Servicer`s regularly

conducted business activities; and (c) it is the regular practice of the Servicer to make such records.

5.      The Servicer services the Loan encumbering the Debtor(s); property.

6.      The information contained in the Motion for Relief ("Motion") is derived from the Servicer's business records and all the Loan documents attached to the Motion as exhibits are true and accurate copies of the original documents.

7.      The business records, which I have reviewed, show that there has been a default under the Loan, by failure to pay the correct post-petition payment effective as of November 1, 2018.

8.      The default has not been cured, and as of July 22, 2024, there are past due and owing to the Servicer the following sums of money under the Debtor's Chapter 13 Plan:

| NAME | AMOUNT |
|---|---|
| Principal Balance | $139,812.01 |
| Interest | $40,597.05 |
| Escrow Advances | $9,470.39 |
| Corporate Advances | $10,849.00 |
| Principal Forbearance | $28,924.22 |
| TOTAL DUE | $229,652.67 |

The amount due and owing to Servicer is subject to change.

9.      The Loan is currently post-petition due for the November 1, 2018 payment.

10.     I certify that the foregoing is true and correct based upon my personal knowledge.

11.    Servicer has retained Howard Law to prosecute the Motion and is obligated to pay a reasonable fee and reimburse costs incurred in connection with the firm's services.

**FURTHER AFFIANT SAYETH NAUGHT**.

_____ /Bawayan _____

Affiant

**SWORN TO** and subscribed before me this _____ day of _____ 2024 by

_____        (Name),        as        an

_____ (Title) of SN Servicing Corporation.  He/she [ ] is personally

known to me or [ ] produced _____ as identification.

_____

NOTARY PUBLIC

My Commission expires:

(Notary Seal)

*Please see the attached California notarial certificate. Thank you.*

# CALIFORNIA JURAT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of  California )

County of  Humboldt )

Subscribed and sworn to (or affirmed) before me on this **4** day

of **August** , 20 **24** , by **Jessica Barragan** ,

proved to me on the basis of satisfactory evidence to be the person(s)

who appeared before me.

```
ANGELA K. VIALE
Notary Public - California
Humboldt County
Commission # 2392060
My Comm. Expires Feb 24, 2026
```

(Seal)

Signature _Angela K Viale_

Comm Expires: 2/24/2026

## Optional Information

Although the information in this section is not required by law, it could prevent fraudulent removal and reattachment of this jurat to an unauthorized document and may prove useful to persons relying on the attached document.

**Description of Attached Document**

This certificate is attached to a document titled/for the purpose of

**Affidavit As to Indebtedness**

containing **3** pages, and dated **8/7/2024** .

### Additional Information

**Method of Affiant Identification**

Proved to me on the basis of satisfactory evidence:
☒ form(s) of identification    ○ credible witness(es)

Notarial event is detailed in notary journal on:
Page # **5**    Entry # **7**

Notary contact: 707.476.2685

**Other**

☒ Affiant(s) Thumbprint(s)  ☐ Describe:

© Copyright 2007-2018 Notary Rotary, PO Box 41400, Des Moines, IA 50311-0507. All Rights Reserved.    Item Number 101884. Please contact your Authorized Reseller to purchase copies of this form.



EXHIBIT D



eportaliaser

Expand All

| Case Number | Filed Date | Disposition Date | County | Case Type | Status | Contested | Jury Trial |
|---|---|---|---|---|---|---|---|
| 132013CA021852000001 [2013-021852-CA-01] | 06/21/2013 | | MIAMI-DADE | RPMF -Homestead ($50,001 - $249,999) | Open | No | No |

| Party Name | Party Type | Attorney | Bar ID |
|---|---|---|---|
| BRINKLEY, TANYA | JUDGE | | |
| BOKOR, ALEXANDER SPICOLA | JUDGE AT DISPOSITION | | |
| Ismael, Yussef | DEFENDANT | POMERANZ, MARK LESLIE | 622508 |
| CORAL CLUB GARDEN VILLAS CONDO | DEFENDANT | | |
| Hammocks Community Association | DEFENDANT | ARON, MAIA | 17188 |
| Aron, Maia | ATTORNEY | | |
| Pomeranz, Mark L | ATTORNEY | | |
| Evan Glasser | ATTORNEY | | |
| ARBOLEDA, TATYANA PAULINE | DEFENDANT | | |
| US BANK TRUST NATIONAL ASSOCIA | PLAINTIFF | GLASSER, EVAN SAMUEL | 643777 |

### Dockets

Page : 1    [ ]  [ ] [ ]    ALL ▾

| Image | Doc # | Action Date | Description | Pages |
|---|---|---|---|---|
| | 104 | 07/30/2024 | Order Case Pending Bankruptcy Stay | 4 |
| | 102 | 07/23/2024 | Order: ON MOTION FOR SUMMARY JUDGMENT | 3 |
| | 101 | 07/22/2024 | Suggestion of Bankruptcy 24-17342-RAM Party: ARBOLEDA, TATYANA PAULINE Volume: 34324  Page: 2687  Instrument Number: 20240552002 | 3 |
| | 103 | 07/21/2024 | Amended Notice of Hearing 07/23/2024 AT 9:00 AM | 3 |
| | 100 | 07/11/2024 | Affidavit of Reasonable Attorney's Fees | 3 |
| | 99 | 07/11/2024 | Affidavit for Atty Fee and Costs | 3 |
| | 98 | 07/03/2024 | Response to Motion | 9 |
| | 97 | 07/03/2024 | Order Resetting Trial/Final Hearing 9/9/2024 @ 8/29/2024 CAL CALL 11:00 AM | 3 |
| | 96 | 06/28/2024 | Notice of Answer to Interrogatories | 5 |
| | 95 | 06/12/2024 | Response to Request for Production | 5 |
| | 94 | 06/04/2024 | Request for Production | 5 |
| | 93 | 06/04/2024 | Notice of Interrogatory | 1 |
| | 92 | 06/03/2024 | Witness and Exhibit List | 3 |
| | 90 | 05/31/2024 | Exhibit List | 3 |
| | 89 | 05/31/2024 | Witness List | 2 |
| | 88 | 05/31/2024 | Request: FOR DEFENDANTS' TRIAL EXHIBITS | 2 |
| | 87 | 05/31/2024 | Notice: OF SERVING COURTESY COPY OF TRIAL ORDER UPON ALL PARTIES | 5 |
| | 91 | 05/31/2024 | Witness and Exhibit List | 3 |
| | 86 | 05/30/2024 | Order Setting Non-Jury Trial 07-08-2024 Cal Call 06-27-2024 @ 9:00 AM | 3 |
| | 85 | 05/30/2024 | Order Setting Non-Jury Trial 07-08-2024 Cal Call 06-27-2024 @ 9:00 AM | 3 |
| | 84 | 05/17/2024 | Notice of Hearing- | 2 |
| | 83 | 05/02/2024 | Affidavit of Indebtedness | 98 |
| | 82 | 05/02/2024 | Affidavit of Reasonable Attorney's Fees | 3 |
| | 81 | 05/02/2024 | Affidavit for Atty Fee and Costs | 5 |
| | 80 | 05/02/2024 | Motion for Summary Judgment | 8 |
| | 79 | 03/06/2024 | Order Granting Substitution of Party Plaintiff | 3 |
| | 78 | 03/06/2024 | Order: Granting Plaintiff's Motion to Reinstate Note Previously Stamped by Court as Cancelled' | 3 |
| | 77 | 03/06/2024 | Order Placing Case On Active Status | 3 |
| | 76 | 03/06/2024 | Order Placing Case On Active Status | 3 |
| | 75 | 02/14/2024 | Amended Notice of Hearing TUESDAY, MARCH 5, 2024 | 2 |
| | 74 | 02/14/2024 | Amended Notice of Hearing TUESDAY, MARCH 5, 2024 | 2 |
| | 73 | 02/14/2024 | Notice of Hearing- TUESDAY, MARCH 5, 2024 | 2 |
| | 72 | 02/14/2024 | Notice of Hearing- | 2 |

| Image | Doc # | Action Date | Description | Pages |
|---|---|---|---|---|
| | | | TUESDAY, MARCH 5, 2024 | |
| | 71 | 02/06/2024 | Motion:<br>To Reinstate Note Previously Stamped By Court As "Cancelled" | 7 |
| | 70 | 02/06/2024 | Motion:<br>To Return Case To Active Status | 21 |
| | 69 | 01/10/2024 | Order for Substitution of Counsel | 3 |
| | 68 | 12/22/2023 | Stipulation for Substitution of Counsel | 5 |
| | 67 | 10/17/2023 | Notice of Hearing-<br>11/13/2023 at 10:30AM | 1 |
| | 66 | 10/05/2023 | Notice of Hearing-<br>10/17/2023 @ 8:30AM | 1 |
| | 65 | 05/29/2023 | Notice of Compliance | 2 |
| | 64 | 05/29/2023 | Notice of Appearance<br><br>Party: Howard, Harris S.; Nationstar Mortgage Llc | 2 |
| | 62 | 05/04/2023 | Lis Pendens<br><br>Volume: 33693  Page: 3940  Instrument Number: 20230301582 | 1 |
| | 61 | 05/04/2023 | Amended Notice<br>OF LIS PENDENS | 1 |
| | 60 | 03/15/2023 | Request:<br>ORIGINAL NOTE, CERT. COPIES OF MORTGAGE, AND ASSIG. OF MORTGAGE PICKED UP. | 1 |
| | 59 | 02/22/2023 | Notice of Filing:<br>ORDER APPOINTING RECEIVER | 16 |
| | 58 | 02/22/2023 | Notice of Appearance<br><br>Party: Eric Thompson; Hammocks Community Association Incorpora | 2 |
| | 57 | 02/17/2023 | Request:<br>ORIGINAL NOTE, CERT. COPIES OF MORTGAGE, AND ASSIG. OF MORTGAGE PROCESSED AND READY FOR PICK UP. | 1 |
| | 56 | 02/15/2023 | Request:<br>FOR RETURN OF ORIGINAL NOTE AND MORTGAGE RECEIVED TODAY FROM:  Greenspoon Marder, LLP. | 1 |
| | 55 | 11/23/2022 | Order:<br>GRANTING PLAINTIFFS TO RETURN ORIGINAL LOAN DOCUMENTS GRANTED | 3 |
| | 54 | 10/25/2022 | Reply to Affirmative Defenses | 3 |
| | 53 | 10/25/2022 | Motion to Release Originals | 2 |
| | 52 | 10/17/2022 | Notice of Filing:<br>Of Order Dismissing Bankruptcy | 3 |
| | 51 | 06/27/2022 | Notice of Cancellation of Hearing | 2 |
| | 50 | 06/09/2022 | Notice of Hearing-<br>June 28th 2022 at 8:00 AM | 2 |
| | 49 | 06/08/2022 | Motion to Withdraw | 2 |
| | 47 | 02/05/2021 | Answer and Affirmative Defense<br><br>Party: ARBOLEDA, TATYANA PAULINE | 8 |
| | 46 | 01/26/2021 | Suggestion of Bankruptcy<br>(Amended)<br>Party: ARBOLEDA, TATYANA PAULINE<br>Volume: 32315  Page: 2721  Instrument Number: 20210066741 | 3 |
| | 45 | 01/25/2021 | * Suggestion of Bankruptcy<br><br>Judge: Section, CA 13<br>Party: ARBOLEDA, TATYANA PAULINE | |
| | 44 | 01/25/2021 | Suggestion of Bankruptcy<br><br>Volume: 32314  Page: 3232  Instrument Number: 20210065454 | 3 |
| | 43 | 01/21/2021 | Notice of Hearing-<br>1/25/2021 | 3 |
| | 42 | 01/15/2021 | Notice of Hearing-<br>on 01-25-2021 at 9:45am | 3 |
| | 41 | 01/11/2021 | Order Denying Motion to Dismiss | 3 |
| | 40 | 12/09/2020 | Response:<br>in opposition to def's mtn to dismiss | 6 |
| | 39 | 12/09/2020 | Amended Notice of Hearing<br>h/12/158/2020 t/ 9:00 am | 3 |
| | 38 | 11/16/2020 | Notice of Hearing- | 2 |
| | 37 | 09/22/2020 | Motion for Substitution of Parties | 9 |
| | 36 | 09/18/2020 | Answer | 3 |
| | 35 | 08/28/2020 | Motion to Dismiss | 6 |
| | 34 | 08/20/2020 | Amended Complaint<br>Notice of Service of Filed Verified Amended Complaint | 70 |
| | 33 | 08/20/2020 | Motion to Cancel Sale<br>Plaintiff's Notice of Service of Court Order | 3 |
| | 32 | 08/13/2020 | Notice To Change Attorney Of Record Within Firm<br><br>Party: Nationstar Mortgage Llc | 2 |
| | 31 | 03/25/2020 | ESummons 20 Day Issued | 2 |
| | 30 | 03/25/2020 | ESummons 20 Day Issued<br><br>Party: ARBOLEDA, TATYANA PAULINE | 2 |
| | 28 | 03/20/2020 | (M) 20 Day (P) Summons (Sub) Received | 2 |
| | 27 | 03/20/2020 | (M) 20 Day (P) Summons (Sub) Received | 2 |

| Image | Doc # | Action Date | Description | Pages |
|---|---|---|---|---|
| | 26 | 02/05/2020 | Amended Complaint | 68 |
| | 25 | 01/17/2020 | Notice:<br>Of Amended Lis Pendens. | 1 |
| | 22 | 01/06/2020 | Order to Vacate Judgment<br>Cancel sale date 1/7/20 and Plaintiff shall have 30 days to Amend it's complaint.<br>Party: Ismael, Yussef; CORAL CLUB GARDEN VILLAS CONDO ASSN INC; Hammocks Community Association Incorpora<br>Volume: 31769  Page: 1643  Instrument Number: 20200023233 | 1 |
| | 21 | 01/03/2020 | Notice of Hearing- | 2 |
| | 20 | 01/02/2020 | Motion to Cancel Sale<br>Emergency | 6 |
| | 19 | 12/30/2019 | Mortgage Foreclosure Publication Fee<br>January 7, 2020<br>Amount: 245.00 | 1 |
| | 18 | 12/10/2019 | Notice of Sale<br>sale for 01/07/2020 | 1 |
| | 17 | 11/05/2019 | Order Resetting Foreclosure Sale<br>Sale Date: 01/07/2020 | 2 |
| | 16 | 10/16/2019 | Notice of Hearing-<br>11/05/2019 | 4 |
| | 15 | 10/09/2019 | Notice of Service of Process | 5 |
| | 14 | 10/04/2019 | Stipulation and Order Substituting Counsel | 3 |
| | 12 | 10/01/2019 | Motion to Reset Sales Date | 4 |
| | 11 | 05/26/2017 | Cancellation Notice | 2 |
| | 10 | 05/23/2017 | Notice of Hearing-<br>06/06/2017 | 4 |
| | 9 | 05/08/2017 | Motion for Substitution of Counsel | 6 |
| | 8 | 04/28/2017 | Email Notice:<br>Karissa.chin-duncan@gmlaw.com | 1 |
| | 7 | 04/28/2017 | Notice of Appearance<br>Party: Chin- Duncan, Karissa; Nationstar Mortgage Llc | 1 |
| | 6 | 12/14/2016 | Order Case Pending Bankruptcy Stay | 2 |
| | 5 | 12/02/2016 | Assignment of Bid | 2 |
| | 4 | 12/02/2016 | Suggestion of Bankruptcy<br>16-26127<br>Party: Ismael, Yussef<br>Volume: 30331  Page: 2419  Instrument Number: 20160694979 | 1 |
| | 3 | 12/01/2016 | Mortgage Foreclosure Publication Fee<br>FOR SALE OF 12/5/16<br>Amount: 245.00 | 2 |
| | 2 | 11/03/2016 | Notice of Sale<br>12-05-2016 | 1 |
| | 1 | 10/31/2016 | Order Resetting Foreclosure Sale<br>Sale Date: 12-5-2016 | 2 |
| | | 09/29/2016 | Notice of Filing:<br>order denying confirmation and dismissing chapter 13 case | 4 |
| | | 09/28/2016 | Motion:<br>(Pn's) *to Resched Frcl Sale | 4 |
| | | 05/12/2016 | Order Case Pending Bankruptcy Stay | 2 |
| | | 05/06/2016 | Suggestion of Bankruptcy<br>YUSSEF ISMAEL 16-16600<br>Volume: 30067  Page: 1138  Instrument Number: 20160268695 | 1 |
| | | 04/28/2016 | Mortgage Foreclosure Publication Fee<br>5-9-16<br>Amount: 230.00 | 2 |
| | | 04/08/2016 | Notice of Sale<br>05-09-2016 | 1 |
| | | 01/11/2016 | Notice:<br>Serving Final Judgment of Foreclosure | 6 |
| | | 01/08/2016 | Mortgage Collection Fee<br><br>Amount: 70.00 | |
| | | 01/07/2016 | Final Judgment by Judge<br><br>Amount: 213367.40<br>Party: Ismael, Yussef; CORAL CLUB GARDEN VILLAS CONDO ASSN INC; Hammocks Community Association Incorpora<br>Volume: 29918  Page: 472  Instrument Number: 20160012870 | 4 |
| | | 01/07/2016 | * Final Judgment by Judge<br><br>Judge: Rebull, Thomas<br>Party: Ismael, Yussef; CORAL CLUB GARDEN VILLAS CONDO ASSN INC; Hammocks Community Association Incorpora; | |
| | | 01/07/2016 | Notice of Filing:<br>Original Note & Copy of Mortgage | 43 |
| | | 01/07/2016 | Final Disposition Document | 1 |
| | | 01/05/2016 | Order:<br>Resetting Non-Juryy Trial for Jan.7, 2016 @ 2:30 P.M. (Room 804) | 1 |
| | | 12/31/2015 | Order:<br>Denying Deft's Emergency Motion for Continuance of Trial Set for Jan. 7, 2016 @ 1:30 P.M. | 2 |
| | | 12/29/2015 | Motion for Continuance | 11 |
| | | 12/18/2015 | Witness List | 3 |
| | | 12/14/2015 | Affidavit as to Costs | 2 |

| Image | Doc # | Action Date | Description | Pages |
|---|---|---|---|---|
| | | 12/14/2015 | Notice of Filing:<br>Affidavit of Costs | 2 |
| | | 12/14/2015 | Notice of Filing:<br>Affidavit of Cost (not attached) | 2 |
| | | 12/14/2015 | Affidavit as to Costs | 2 |
| | | 11/13/2015 | Witness List | 4 |
| | | 11/10/2015 | Witness List | 6 |
| | | 11/10/2015 | Certificate of Service | 5 |
| | | 11/05/2015 | Order Setting Non-Jury Trial<br>Room 804 @ 1:30 P.M.<br>Due: 01/07/2016 | 3 |
| | | 10/27/2015 | Notice of Trial (case at Issue)<br>*N/J Trial (Estimate - 45 Mins) | 2 |
| | | 09/22/2015 | Cancellation Notice | 2 |
| | | 09/22/2015 | Notice:<br>of withdrawal of motion | 2 |
| | | 09/08/2015 | Notice of Hearing-<br>10/13/2015 | 7 |
| | | 09/05/2015 | Notice of Hearing-<br>10/13/2015 | 7 |
| | | 07/17/2015 | Non-Military Affidavit | 3 |
| | | 07/16/2015 | Motion:<br>for judicial default | 5 |
| | | 07/16/2015 | Affidavit of:<br>to military status | 3 |
| | | 07/01/2015 | Certificate of Service | 3 |
| | | 06/30/2015 | Order:<br>Granting Plff's mtn to strike Deft's affirmative defenses | 1 |
| | | 06/15/2015 | Notice of Hearing-<br>06/30/2015 | 13 |
| | | 04/30/2015 | Default<br><br>Party: CORAL CLUB GARDEN VILLAS CONDO ASSN INC; Hammocks Community Association Incorpora | 1 |
| | | 04/29/2015 | Motion for Default | 6 |
| | | 04/22/2015 | Motion to Strike | 11 |
| | | 04/08/2015 | Motion for Extension of Time | 3 |
| | | 03/26/2015 | Answer and Affirmative Defense<br><br>Party: Pomerantz, Mark L; Ismael, Yussef | 12 |
| | | 03/19/2015 | Certificate of Service | 4 |
| | | 03/03/2015 | Order:<br>denying deft's mtn to dismiss and/or strike plff's complaint | 1 |
| | | 02/23/2015 | Certificate of Service | 2 |
| | | 02/11/2015 | Notice of Hearing Set-<br>MOTIONS      03/03/2015 09:00AM LS:01/13 | 1 |
| | | 02/07/2015 | Request for Hearing | 8 |
| | | 12/29/2014 | Certificate of Service | 5 |
| | | 12/16/2014 | Order:<br>DENYING PLFF'S MTN FOR SUBSTITUTION OF COUNSEL | 1 |
| | | 12/02/2014 | Order:<br>FOR SUBSTITUTION OF COUNSEL | 2 |
| | | 11/19/2014 | Response to Request for Admissions | 3 |
| | | 10/31/2014 | Notice of Hearing Set-<br>MOTIONS      12/16/2014 09:00AM LS:01/13 | 9 |
| | | 10/31/2014 | Request for Hearing | 9 |
| | | 10/02/2014 | Response to Request for Production | 4 |
| | | 09/29/2014 | Response to Request for Production | 3 |
| | | 09/18/2014 | Request for Hearing | 5 |
| | | 09/05/2014 | Request for Admissions | 3 |
| | | 09/05/2014 | Request for Production | 3 |
| | | 09/05/2014 | Notice of Interrogatory | 6 |
| | | 08/22/2014 | Response:<br>IN OPPOSITION TO DEFENDANT MOTION TO DISMISS | 19 |
| | | 07/30/2014 | Motion for Substitution of Counsel | 7 |
| | | 07/30/2014 | Notice:<br>OF APPEARNACE AS COUNSEL | 3 |
| | | 04/22/2014 | Request for Hearing | 2 |
| | | 03/07/2014 | Email Notice:<br>ESERVICE@MARSHALLWATSON.COM | 2 |
| | | 01/13/2014 | Request for Hearing | 2 |
| | | 01/13/2014 | Notice of Hearing Set-<br>MOTIONS      02/04/2014 09:00AM LS:01/13 | 2 |
| | | 01/13/2014 | Notice of Hearing-<br>MOTIONS      02/04/2014 09:00 AM | 2 |
| | | 11/01/2013 | Motion to Dismiss | 3 |

| Image | Doc # | Action Date | Description | Pages |
|---|---|---|---|---|
| | | 10/28/2013 | Motion for Default | 5 |
| | | 10/28/2013 | Notice:<br>AFFIDAVIT AS TO MILITARY STATUS | 3 |
| | | 10/28/2013 | Affidavit for Atty Fee and Costs | 2 |
| | | 10/28/2013 | Motion for Summary Judgment | 3 |
| | | 10/28/2013 | Notice:<br>AFFIDAVIT SUPPORTING MOTION FOR FINAL SUMMARY JUDGMENT | 16 |
| | | 10/28/2013 | Notice:<br>OF LEAD COUNSEL | 2 |
| | | 10/07/2013 | Notice of Filing:<br>NON RESIDENT COST BOND | 2 |
| | | 10/07/2013 | Bond $<br>$     100.00 BK:28857 PG:0479<br>COST (SURETY)<br>Amount: 100.00<br>Party: Nationstar Mortgage Llc<br>Volume: 28857  Page: 0479  Instrument Number: | 2 |
| | | 10/01/2013 | Notice of Filing:<br>FILING COST BOND | 4 |
| | | 09/30/2013 | Order:<br>FOR EXTENSION OF TIME | 1 |
| | | 09/23/2013 | Motion for Default | 4 |
| | | 09/23/2013 | Notice Of Voluntary Dismissal Of Unknown Parties | 4 |
| | | 09/23/2013 | Notice To Change Attorney Of Record Within Firm<br>Party: Nationstar Mortgage Llc | 2 |
| | | 09/23/2013 | Notice:<br>OF NO OBJECTION TO DEFENDANT MOTION FOR EXTENSION OF TIM | 8 |
| | | 08/14/2013 | Service Return for Unknown Party | 3 |
| | | 08/02/2013 | Notice of Appearance<br>ATTORNEY:00622508<br>Party: Ismael, Yussef | 1 |
| | | 08/02/2013 | Notice of Unavailability/absence | 1 |
| | | 08/02/2013 | Email Notice:<br>EFILED | 1 |
| | | 08/02/2013 | Motion for Extension of Time | 2 |
| | | 07/31/2013 | Service Returned<br>BADGE #   1912 P 07/24/2013<br>Party: Ismael, Yussef | 4 |
| | | 07/31/2013 | Service Return for Unknown Party | 3 |
| | | 07/30/2013 | Service Returned<br>BADGE #   1607 P 07/17/2013<br>Party: CORAL CLUB GARDEN VILLAS CONDO ASSN INC | 2 |
| | | 07/25/2013 | Service Returned<br>BADGE #   1464 P 07/18/2013<br>Party: Hammocks Community Association Incorpora | 2 |
| | | 06/21/2013 | Lis Pendens<br>B: 28693 P: 1950<br>Volume: 28693  Page: 1950  Instrument Number: | 2 |
| | | 06/21/2013 | E-Filing Number<br>EFILE NUMBER:    3133983 | |
| | | 06/21/2013 | Filing Fee For Mortgage Foreclosure<br>$     906.00<br>Amount: 906.00 | |
| | | 06/21/2013 | Email Notice:<br>EFILED | 1 |
| | | 06/21/2013 | Letter of Correspondence | 2 |
| | | 06/21/2013 | Civil Cover | 2 |
| | | 06/21/2013 | Complaint | 43 |

| Judge Assignment History | ☐ |
|---|---|

| Court Events | ☐ |
|---|---|

| Financial Summary | ☐ |
|---|---|

| Reopen History | ☐ |
|---|---|

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

# EXHIBIT E

CIRCUIT CIVIL DIVISION
CASE NO:  2013-CA-021852-CA-01

Nationstar

**Plaintiff(s),**

**vs.**

Yussef Ismael

**Defendant(s),**

ORDER
GRANTING/DENYING
PLAINTIFF'S/DEFENDANT'S
3rd party

THIS CAUSE having come on to be heard on 3rd Party
on ~~Plaintiff's/Defendant~~'s Motion

to cancel Sale Set for 1/7/20

and the Court having heard arguments of counsel, and being otherwise advised in the premises, it is hereupon

ORDERED AND ADJUDGED that said Motion be, and the same is hereby

Granted. The Sale Set for 1/7/20 is
Cancelled. The Final Judgment is
Vacated. Plaintiff shall have
30 days to amend its complaint

DONE AND ORDERED in Chambers at Miami-Dade County, Florida this 6th

day of January , 2020

CIRCUIT COURT JUDGE

JUDGE ALEXANDER S. BOKOR
Circuit Judge

Copies furnished to: Counsel of Record

117_01-554   3/11

# EXHIBIT F

| HOME | EXEMPTIONS & OTHER | REAL ESTATE | TANGIBLE PERSONAL PROPERTY | PUBLIC RECORDS | ONLINE TOOLS | TAX ROLL ADMINISTRATION | ABOUT US | CONTACT US |
|------|------|------|------|------|------|------|------|------|

ADDRESS    OWNER NAME    SUBDIVISION NAME    FOLIO

111 NW 1 St

**SEARCH:** 15067 sw 1...    ✕    Suite    |    🔍    Back to Search Results

## PROPERTY INFORMATION ⓘ

**Folio:** 30-5904-071-2390

**Sub-Division:**
CORAL CLUB GARDEN VILLAS CONDO

**Property Address**
15067 SW 103 TER   UNIT:  14112

**Owner**
TATYANA PAULINE ARBOLEDA

**Mailing Address**
15067 SW 103 TER # 14112
MIAMI, FL 33196

**PA Primary Zone**
5000 HOTELS & MOTELS - GENERAL

**Primary Land Use**
0407 RESIDENTIAL - TOTAL VALUE : CONDOMINIUM - RESIDENTIAL

| | |
|---|---|
| **Beds / Baths /Half** | 2 / 2 / 0 |
| **Floors** | 0 |
| **Living Units** | 1 |
| **Actual Area** | |
| **Living Area** | 1,090 Sq.Ft |
| **Adjusted Area** | 1,090 Sq.Ft |
| **Lot Size** | 0 Sq.Ft |
| **Year Built** | 1991 |



2023 Aerial Photography

200 ft

---

### Featured Online Tools

| | | |
|---|---|---|
| Comparable Sales | Glossary | PA Additional Online Tools |
| Property Record Cards | Property Search Help | Property Taxes |
| Report Discrepancies | Report Homestead Fraud | Special Taxing Districts and Other Non-Ad valorem Assessments |
| Tax Comparison | Tax Estimator | TRIM Notice |
| Value Adjustment Board | Tax Visualizer | |

## ASSESSMENT INFORMATION ⓘ

| Year | 2024 | 2023 | 2022 |
|---|---|---|---|
| Land Value | $0 | $0 | $0 |
| Building Value | $0 | $0 | $0 |
| Extra Feature Value | $0 | $0 | $0 |

| Market Value | $274,500 | $225,000 | $180,000 |
| Assessed Value | $217,800 | $198,000 | $180,000 |

## TAXABLE VALUE INFORMATION ⓘ

| Year | 2024 | 2023 | 2022 |
| --- | --- | --- | --- |
| **COUNTY** | | | |
| Exemption Value | $0 | $0 | $0 |
| Taxable Value | $217,800 | $198,000 | $180,000 |
| **SCHOOL BOARD** | | | |
| Exemption Value | $0 | $0 | $0 |
| Taxable Value | $274,500 | $225,000 | $180,000 |
| **CITY** | | | |
| Exemption Value | $0 | $0 | $0 |
| Taxable Value | $0 | $0 | $0 |
| **REGIONAL** | | | |
| Exemption Value | $0 | $0 | $0 |
| Taxable Value | $217,800 | $198,000 | $180,000 |

## BENEFITS INFORMATION ⓘ

| Benefit | Type | 2024 | 2023 | 2022 |
| --- | --- | --- | --- | --- |
| Non-Homestead Cap | Assessment Reduction | $56,700 | $27,000 | |

Note: Not all benefits are applicable to all Taxable Values (i.e. County, School Board, City, Regional).

## FULL LEGAL DESCRIPTION ⓘ

CORAL CLUB GARDEN VILLAS CONDO

UNIT 14112 BLDG 14

UNDIV 0.55%

INT IN COMMON ELEMENTS

OFF REC 23547-1153

OR 23070-4893 0205 2

COC 24464-0694 11 2005 1

## SALES INFORMATION ⓘ

| Previous Sale | Price | OR Book-Page | Qualification Description | Previous Owner 1 |
| --- | --- | --- | --- | --- |
| 01/21/2021 | $100 | 33163-0850 | Corrective, tax or QCD; min consideration | YUSSEF ISMAEL |
| 01/11/2012 | $100 | 28680-1423 | Corrective, tax or QCD; min consideration | YUSSEF ISMAEL |
| 11/01/2005 | $216,900 | 24464-0694 | Sales which are qualified | |
| 02/01/2005 | $26,880,000 | 23070-4893 | Deeds that include more than one parcel | |

For more information about the Department of Revenue's Sales Qualification Codes.

## ADDITIONAL INFORMATION

\* The information listed below is not derived from the Property Appraiser's Office records. It is provided for convenience and is derived from other government agencies.

**LAND USE AND RESTRICTIONS**

| Community Development District: | NONE | Community Redevelopment Area: | NONE |
|---|---|---|---|
| Empowerment Zone: | NONE | Enterprise Zone: | NONE |
| Urban Development: | INSIDE URBAN DEVELOPMENT BOUNDARY | Zoning Code: | RU-4A-RU-4 or Hotel/Motel District, 75 units/net acre |
| Existing Land Use: | 30-Multi-Family, Low-Density (Under 25 DU/Gross Acre). | Government Agencies and Community Services | |

### OTHER GOVERNMENTAL JURISDICTIONS

| Business Incentives | Childrens Trust | Environmental Considerations | Florida Inland Navigation District |
|---|---|---|---|
| Miami-Dade County | Septic - Well: Property List (MDC) | Septic - Well: Septic GIS Points (DOH) | Septic - Well: Well GIS Points (DOH) |
| PA Bulletin Board | Special Taxing District and Other Non-Ad valorem Assessment | School Board | South Florida Water Mgmt District |
| Tax Collector | | | |

The Office of the Property Appraiser is continually editing and updating the tax roll. This website may not reflect the most current information on record. The Property Appraiser and Miami-Dade County assumes no liability, see full disclaimer and User Agreement at http://www.miamidade.gov/info/disclaimer.asp

For inquiries and suggestions email us at
http://www.miamidade.gov/PAPortal/ContactForm/ContactFormMain.aspx.
Version: 2.1.0



EXEMPTIONS & BENEFITS

Deployed Military

Disability Exemptions

Homestead

Institutional

Senior Citizens

More >

REAL ESTATE

Building Recertification

Appealing Your Assessment

Defective Drywall

Folio Numbers

Mortgage Fraud

More >

## TANGIBLE PERSONAL PROPERTY

Appealing your Assessment

Assessment Information Search

Exemptions

Extension Requests

Filing Returns

More >

## PUBLIC RECORDS

Address Blocking

Change of Name

Change of Address

Change of Ownership & Title

Declaration of Condominium

More >

## ONLINE TOOLS

Property Search

Property Sales

Tax Estimator

Tax Comparison

Homestead Exemption and Portability

More >

## TAX ROLL ADMINISTRATION

Appealing your Assessment

Reports

More >

©2024 Miami-Dade County. All rights reserved.